**Thomas C. Sand**, OSB No. 773322
tom.sand@millernash.com
**John C. Clarke**, OSB No. 153245
john.clarke@millernash.com
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon  97204
Phone:  503.224.5858
Fax:  503.224.0155

    Attorneys for Defendant
    WinCo Foods, LLC

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| RACHEL MILLER, VIRGINIA SIMONIN, individually, and on behalf of others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>WINCO FOODS, LLC,<br><br>    Defendant. | No. 3:19-cv-02094-AC<br><br>DEFENDANT WINCO FOODS, LLC'S MOTION TO DISMISS<br><br>**ORAL ARGUMENT REQUESTED** |

## LR 7-1 AND 7-2 CERTIFICATE

    Counsel for defendant, WinCo Foods, LLC, conferred with counsel for plaintiffs,

Rachel Miller and Virginia Simonin, but the parties have been unable to resolve the issues in this

Page 1 -    Defendant WinCo Foods, LLC's Motion to Dismiss

motion. This memorandum complies with the applicable page limitation in LR 7-2(b) because it does not exceed 35 pages.

## MOTION TO DISMISS

Plaintiffs seek to hold WinCo liable for disclosing to its customers a 1 percent surcharge known as the Clean Energy Surcharge (the "CES") by itemizing the surcharge on customer receipts. The City of Portland, however, has addressed the conduct at issue and affirmatively authorized retailers to itemize the CES on receipts.[1] Plaintiffs' claims should therefore be dismissed.

In 2018, Portland voters passed a ballot measure known as the Portland Clean Energy Fund, establishing the 1 percent CES on certain products sold by large retailers, including WinCo. The fund aims to support clean energy initiatives. In 2019, the City of Portland implemented the measure. Following a public hearing, the City of Portland adopted administrative rules, which, among other things, affirmatively authorized retailers to itemize the CES on customer receipts. Plaintiffs may disagree with the City of Portland's implementation of the Portland Clean Energy Fund and its rules, but this case is not the appropriate forum to resolve that disagreement. Accordingly, under Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure, WinCo moves to dismiss the class action allegation amended complaint ("the Amended Complaint") on the following grounds:

1. First, plaintiffs fail to state a claim for violation of the Unlawful Trade Practices Act ("UTPA") because the City of Portland addressed the conduct at

---

[1] Plaintiffs' counsel has also filed a lawsuit against Safeway, relating to Safeway's itemization of the CES obligation on its receipts. *See Joshua Gagnier v. Safeway Inc.*, Multnomah County Circuit Court, No. 19CV45421. A courtesy copy of Safeway's pending motion to dismiss, which raises substantially similar arguments to the arguments in this motion, is attached to the declaration of John Clarke in support of this motion.

Page 2 -   Defendant WinCo Foods, LLC's Motion to Dismiss

4820-0983-6213.1

Case 3:19-cv-02094-AC    Document 13    Filed 02/25/20    Page 3 of 17

   issue and affirmatively authorized retailers to itemize the CES obligation on customers' receipts.

2. Second, plaintiffs do not allege a cognizable "unlawful trade practice" under the UTPA:

   a. Plaintiffs fail to state a claim for violation of ORS 646.608(1)(s), which creates liability for misrepresentations concerning the "offering price" of goods, because WinCo's alleged representation relates to a surcharge, not the actual price of the goods; and

   b. Plaintiffs fail to state a claim for violation of ORS 646.608(1)(i), which creates liability for traditional "bait and switch" advertising, because WinCo did not misrepresent the goods as advertised.

3. Third, even if plaintiffs could state a cognizable unlawful trade practice under the UTPA, plaintiffs have not alleged that they suffered "ascertainable loss" from WinCo's alleged conduct.

4. Fourth, plaintiffs fail to state a claim under the UTPA because their allegation regarding a "willful" use of an unlawful practice falls far short of their pleading obligations and is conclusory.

5. Fifth, plaintiffs fail to state a claim for unjust enrichment because the Amended Complaint fails to state a claim for any kind of unjustness recognized under Oregon law.

Even if plaintiffs were permitted to amend their complaint, again, to expand certain allegations, plaintiffs could not cure the defects. The claims against WinCo should therefore be dismissed with prejudice.

## BACKGROUND

In November 2018, Portland voters passed a citizen ballot measure establishing a municipal grant program known as the Portland Clean Energy Fund. The program is designed to fund green energy initiatives from the 1 percent CES on large retail corporations that generate over $1 billion a year in national revenue and $500,000 in Portland annual revenue. Portland

Page 3 -    Defendant WinCo Foods, LLC's Motion to Dismiss

City Code ("Code") §§ 7.02.500, 7.07.010-.070.[2] The program exempts basic groceries and health care services, among others. Code § 7.07.020.

In 2019, the City of Portland implemented the Clean Energy Fund by amending the Code and adopting administrative rules. Code §§ 7.02.500, 7.07.010-.070. Among other things, the city adopted rules providing that "[a] Large Retailer may separately itemize its CES obligations on its invoices to its customers to whatever extent it chooses. A Large Retailer may describe CES on its invoices in whatever manner it chooses." Portland's Business Tax Administrative Rule ("Administrative Rule") § 500.19-6. In other words, retailers may itemize the CES on receipts just as WinCo did in this case, as reflected in the photographs of plaintiffs' receipts. Am. Compl. ¶¶ 10-11.

On November 25, 2019, plaintiff Rachel Miller filed a class-action complaint against WinCo in Multnomah County Circuit Court. WinCo timely removed the action to this court on December 26, 2019. Plaintiffs filed the Amended Complaint on February 11, 2020, dismissing one claim under the UTPA and adding another.

Plaintiffs are individuals living in Portland, Oregon, and customers of WinCo. Am. Compl. ¶¶ 4, 9. Plaintiffs allege that in October and November 2019, they purchased nongrocery consumer goods from WinCo. Am. Compl. ¶ 9. After consenting to the prices at the register, purchasing the goods, and reading their receipts, plaintiffs allege, they "discovered that defendant's sticker price was falsely advertised because defendant added and collected a hidden nine cent surcharge in addition to the advertised price of its non-grocery consumer goods to

---

[2] For the court's convenience, copies of the applicable Portland City Code and Business Tax Administrative Rules are attached to the declaration of John Clarke in support of this motion.

Page 4 -    Defendant WinCo Foods, LLC's Motion to Dismiss

plaintiff, causing plaintiff ascertainable loss hidden surcharge that was collected from them." Am. Compl. ¶ 12.

Plaintiffs assert two claims for violation of the UTPA and unjust enrichment, alleging that WinCo's violations "were willful and reckless because defendant knew the sticker price on its shelves was lower than the price defendant would actually charge and collect from plaintiffs and the class members for certain non-grocery consumer goods." Am. Compl. ¶ 25. According to plaintiffs, WinCo's alleged conduct was in "pursuit of profit" and "was reprehensible, and violated the common standards required of corporations by the people of Oregon." Am. Compl. ¶ 26.

## ARGUMENT

### I.   The Amended Complaint Fails to State a Claim Under the UTPA

The UTPA is a remedial statutory scheme, "enacted as a comprehensive statute for the protection of consumers from unlawful trade practices." *Pearson v. Philip Morris, Inc.*, 358 Or. 88, 115 (2015).  To state a claim for relief, a plaintiff must allege that (1) the defendant was acting in the course of the defendant's business, vocation, or occupation; (2) the goods or services at issue are primarily for personal, family, or household purposes; (3) the defendant willfully engaged in an unlawful trade practice set forth in ORS 646.607, ORS 646.608(1)(a)-(ccc), or Oregon's Administrative Rules; and (4) the plaintiff suffered an ascertainable loss of money as a result of the unlawful practice.  ORS 646.605.656.

Plaintiffs' claim under the UTPA is subject to dismissal for four reasons.  *First*, the City of Portland's rules expressly address the conduct at issue, and authorize WinCo to itemize the CES on receipts.  *Second*, plaintiffs fail to allege a cognizable "unlawful trade

practice" under the UTPA.  *Third*, even if plaintiffs could state a cognizable claim for an unlawful trade practice, plaintiffs do not allege that they suffered an "ascertainable loss" from WinCo's alleged conduct.

*Fourth*, plaintiffs do not (and cannot in good faith) plead any facts to establish that WinCo's alleged violation of the UTPA was "willful," because WinCo's practice of disclosing the CES is affirmatively authorized by statute.

### A.    The City of Portland Affirmatively Authorizes WinCo's Conduct

As a matter of law, plaintiffs fail to overcome the fact that the City of Portland affirmatively authorizes the alleged conduct at issue.  Administrative Rule 500.19-6 states that a retailer "may separately itemize its CES obligations on its invoices to its customers to whatever extent it chooses."  Because WinCo, as alleged, itemizes its CES obligation on its receipts to customers, WinCo's conduct cannot give rise to a claim under the UTPA.

The UTPA exempts conduct in compliance with the law.  ORS 646.612(1) states that the unlawful practices listed in ORS 646.608 cannot apply to "[c]onduct in compliance with the orders or rules of, or a statute administered by a federal, state or local governmental agency." WinCo's conduct falls squarely within this exemption.  The City of Portland's administrative rules are administered by a local governmental agency, the City of Portland, and the rules affirmatively authorize retailers to itemize their CES obligations on receipts.  By itemizing its CES obligation on receipts, WinCo complies with the rules, and its compliance falls within the exemption.

Although in *Rathgeber v. James Hemenway, Inc.*, 335 Or. 404, 410-11 (2003), and *Hinds v. Paul's Auto Werkstatt, Inc.*, 107 Or. App. 63, 67 (1991), decisions applying the

Page 6 -    Defendant WinCo Foods, LLC's Motion to Dismiss

4820-0983-6213.1

provisions of ORS 646.612(1), the courts limited the UTPA's exemption to conduct that is required by other laws, those decisions do not affect the analysis above. The facts in those cases involved conduct merely regulated by other laws. In *Hinds*, for example, the buyer of a used car brought an action under the UTPA against the seller for failing to disclose a material defect with the vehicle. 107 Or. App. at 65. The seller argued that because its conduct was generally in compliance with federal regulations involving the sale, the exemption in ORS 636.612(1) applied. *Id.* The court disagreed, reversing the trial court's grant of summary judgment in favor of the defendant. *Id.* Given that most businesses are subject to some type of regulation, the court properly recognized that conduct is not exempt from the UTPA merely because it is regulated by other laws.

To protect against conflicting laws, courts have consistently and repeatedly applied similar exemptions to preclude consumer protection claims arising from conduct affirmatively authorized by federal, state, or local laws. *Miller v. U.S. Bank of Wash., N.A.*, 72 Wash. App. 416, 420 (1994), *as corrected* (Feb. 22, 1994) ("The statute does not exempt actions or transactions merely because they are regulated generally; the exemption applies only if the particular practice found to be unfair or deceptive is specifically permitted, prohibited, or regulated."); *Skinner v. Steele*, 730 S.W.2d 335, 337 (Tenn. Ct. App. 1987) (holding that only activities "specifically authorized" by a regulation or another statute were exempt); *Showpiece Homes Corp. v. Assurance Co. of Am.*, 38 P.3d 47, 56 (Colo. 2001), *as modified on denial of reh'g* (Jan. 11, 2002) (holding that actions "in compliance with" other laws are exempt from State Deceptive Practices Act). In *Skinner*, the Tennessee Court of Appeals, in construing an exemption similar to that in ORS 636.612(1), explained:

Page 7 -    Defendant WinCo Foods, LLC's Motion to Dismiss

4820-0983-6213.1

provisions of ORS 646.612(1), the courts limited the UTPA's exemption to conduct that is required by other laws, those decisions do not affect the analysis above. The facts in those cases involved conduct merely regulated by other laws. In *Hinds*, for example, the buyer of a used car brought an action under the UTPA against the seller for failing to disclose a material defect with the vehicle. 107 Or. App. at 65. The seller argued that because its conduct was generally in compliance with federal regulations involving the sale, the exemption in ORS 636.612(1) applied. *Id.* The court disagreed, reversing the trial court's grant of summary judgment in favor of the defendant. *Id.* Given that most businesses are subject to some type of regulation, the court properly recognized that conduct is not exempt from the UTPA merely because it is regulated by other laws.

To protect against conflicting laws, courts have consistently and repeatedly applied similar exemptions to preclude consumer protection claims arising from conduct affirmatively authorized by federal, state, or local laws. *Miller v. U.S. Bank of Wash., N.A.*, 72 Wash. App. 416, 420 (1994), *as corrected* (Feb. 22, 1994) ("The statute does not exempt actions or transactions merely because they are regulated generally; the exemption applies only if the particular practice found to be unfair or deceptive is specifically permitted, prohibited, or regulated."); *Skinner v. Steele*, 730 S.W.2d 335, 337 (Tenn. Ct. App. 1987) (holding that only activities "specifically authorized" by a regulation or another statute were exempt); *Showpiece Homes Corp. v. Assurance Co. of Am.*, 38 P.3d 47, 56 (Colo. 2001), *as modified on denial of reh'g* (Jan. 11, 2002) (holding that actions "in compliance with" other laws are exempt from State Deceptive Practices Act). In *Skinner*, the Tennessee Court of Appeals, in construing an exemption similar to that in ORS 636.612(1), explained:

> The purpose of the exemption is to ensure that a business is not subjected to a lawsuit under the [Tennessee Consumer Protection] Act when it does something required by law, or does something that would otherwise be a violation of the Act, but which is allowed under other statutes or regulations. It is intended to avoid conflict between laws, not to exclude from the Act's coverage every activity that is authorized or regulated by another statute or agency.

730 S.W.2d at 337. Consistent with that rationale, a plain reading of the exemption in ORS 636.612(1) leads to the conclusion that conduct affirmatively authorized by federal, state, and local laws cannot give rise to a cause of action under the UTPA.

Because WinCo itemizes the CES obligation on customer receipts in accordance with Portland's administrative rules, which affirmatively authorize such conduct, plaintiffs cannot assert a claim under the UTPA.

### B. Plaintiffs Fail to Allege a Cognizable Unlawful Practice

Plaintiffs allege violations of the UTPA under ORS 646.608(1)(s) and (i). Am. Compl. ¶ 24.[3] While the UTPA enumerates several specific acts that violate the statute, the UTPA restricts only those trade practices expressly enumerated in the statute. *See Lamm v. Amfac Mortg. Corp.*, 44 Or. App. 203, 205 (1980). As set forth below, plaintiffs fail to allege facts that amount to a violation of the statute.

#### 1. Plaintiffs Fail to Allege Facts Establishing a Violation of ORS 646.608(1)(s)

Plaintiffs allege that WinCo "made false or misleading representations of fact" concerning the cost for its consumer goods in violation of ORS 646.608(1)(s) "by falsely representing to plaintiffs and other class members . . . that its goods could be purchased for a certain price, when in fact defendant knew that at its registers it would instead charge plaintiffs

---

[3] Plaintiffs dismissed a claim arising from ORS 646.608(1)(u) in the original complaint.

Page 8 -    Defendant WinCo Foods, LLC's Motion to Dismiss

4820-0983-6213.1

and other members a mandatory hidden surcharge in addition to the advertised price of its consumer goods." Am. Compl. ¶ 22. Plaintiffs' allegations, however, do not rise to state a violation of ORS 646.608(1)(s).

ORS 646.608(1)(s) applies only when a defendant "[m]akes false or misleading representations of fact concerning the offering price of, or the person's cost for real estate, goods or services." ORS 646.608(1)(s). Plaintiffs, however, fail to allege any misrepresentations concerning the "offering price" of actual "goods" under ORS 646.608(1)(s). Instead, plaintiffs' allegations are specific to WinCo's itemization of CES, which is not a "good" within the meaning of the UTPA. *See Cullen v. Inv. Strategies, Inc*. 139 Or. App. 119, 126 (1996) ("Money, however, is impossible to categorize. It may be used to purchase real estate, goods or services but it is not itself one of those things.") *Roach v. Mead*, 76 Or. App. 83, 87, 709 (1985) ("The basic problem with plaintiff's claim is that money is a medium, not an article, of commerce.").

Because WinCo's alleged representations regarding "cost" relate only to the CES—not to the actual price of the "goods" purchased by plaintiffs—plaintiffs cannot form the basis of a UTPA claim under ORS 646.608(1)(s).

### 2. Plaintiffs Fail to Allege Facts Establishing a Violation of ORS 646.608(1)(i)

Plaintiffs further allege that WinCo violated ORS 646.608(1)(i) by advertising "consumer goods to plaintiffs and the other class members, including on the prices on its shelves, with the intent not to provide the goods at the advertised price." Am. Compl. ¶ 23. Plaintiffs' allegations, however, do not establish a violation of ORS 646.608(1)(i).

ORS 646.608(1)(i) creates liability for a person who "[a]dvertises real estate, goods or services with the intent not to provide them as advertised, or with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity." The statute protects against "bait and switch advertising," a practice by which a seller seeks to attract customers through advertising at low prices products that it does not intend to sell to the customer. Because plaintiffs do not allege that WinCo advertised products with the intent not to provide them as advertised, nor do plaintiffs allege that they did not receive the products that they sought to purchase from WinCo, plaintiffs' allegations are not sufficient to form the basis of a UTPA claim under ORS 646.608(1)(i).

### C. Plaintiffs Fail to Allege "Ascertainable Loss"

Even if plaintiffs adequately alleged that WinCo engaged in an unlawful trade practice under ORS 646.608(1) (which they did not), plaintiffs' claim still would not survive because of their failure to allege "ascertainable loss" from WinCo's alleged conduct.

Under the UTPA, "a plaintiff in a private action [seeking to enforce the UTPA] must prove injury in the form of an 'ascertainable loss of money or property,'" as a result of the defendant's alleged violation. *Pearson*, 358 Or. at 116 (quoting ORS 646.638(1)). An "ascertainable loss" is one that is "capable of being discovered, observed or established," *Scott v. W. Int'l Surplus Sales, Inc.*, 267 Or. 512, 515 (1973), and also "must be objectively verifiable, much as economic damages in civil actions must be." *Pearson*, 358 Or. at 117. In addition, "the unlawful trade practice must have caused the ascertainable loss that the plaintiff suffered." *Id.*

Plaintiffs allege that WinCo's disclosure of the CES on customer receipts caused plaintiffs and "other class members ascertainable loss in the amount of the undisclosed

surcharges that they paid to defendant and the loss of use of money and interest on the undisclosed surcharges." Am. Compl. ¶ 24. Plaintiffs' allegations, however, are insufficient to establish "ascertainable loss" under any of the three theories of "ascertainable loss" recognized under Oregon law. Specifically, plaintiffs have failed to allege an "ascertainable loss" under (1) a "product purchase price" theory in which the loss is the full value of the product purchased, (2) a "diminished value" theory in which the loss is the higher price paid for a product than advertised, or (3) an "illegal charge" theory, which applies only when a charge is not disclosed in a manner required by law.

A "product purchase price" theory is based on the alleged failure to receive what a defendant's alleged misrepresentation led the plaintiff to believe she was buying. *Silva v. Unique Beverage Co.*, No. 3:17-00391-HZ, 2017 WL 4896097, at *10 (D. Or. Oct. 30, 2017). In other words, "ascertainable loss" under the "product purchase price" theory requires a plaintiff to plead and prove that in the absence of the defendant's alleged misrepresentation, "the purchaser would not have bought the product and thus should be entitled to a refund." *Pearson*, 358 Or. at 126. Plaintiffs do not allege any facts to support such a theory. There is no allegation that plaintiffs would not have purchased the products from WinCo if they had known about the CES earlier, nor do plaintiffs allege that their purchasing decisions were influenced by the CES. Accordingly, plaintiffs' alleged "ascertainable loss" under this theory fails.

Under the "diminished value" theory of "ascertainable loss," plaintiffs must show "that they and the class members bought a product that was worth less than they paid for it, and their damages were the difference in the value of the product as represented versus the value of the product they actually received." *Pearson*, 358 Or. at 118-19. Under this theory, plaintiffs'

Page 11 -   Defendant WinCo Foods, LLC's Motion to Dismiss

"ascertainable loss" must be supported by some factual allegations that plaintiffs "'paid more money' and a 'higher price'" because of WinCo's alleged representations. *Silva*, 2017 WL 4896097, at *10; *see also Mendoza v. Lithia Motors, Inc.*, No. 6:16-01264-AA, 2017 WL 125018, at *4 (D. Or. Jan. 11, 2017) (dismissing claim because of plaintiffs' failure to allege "what they would have done differently or how the vehicle transactions would have been different if defendants had disclosed the alleged payments"). Plaintiffs fail to allege that any facts under a "diminished value" theory. Plaintiffs do not allege the value of the products they purchased was less than the value of the products as represented by WinCo. Further, plaintiffs do not allege that the qualities or characteristics affecting the value of the products, and the CES is not a quality or characteristic that bears on the products' inherent value. While plaintiffs' receipts reflect that they paid 9 and 10 cents, respectively, for the CES obligation, the 9 and 10 cents were not for any feature or characteristic affecting the value of the products. Am. Compl. ¶¶ 10-11. Because there was no loss to the "value" of the products that plaintiffs purchased, plaintiffs fail to allege "ascertainable loss" under a "diminished value" theory. *See Silva*, 2017 WL 4896097, at *9 (recognizing that "[a]llegations suggesting that the product costs the same with or without the represented characteristic cannot logically support an inference that the product without the feature is worth less").

Plaintiffs also cannot allege "ascertainable loss" under an "illegal charge" theory, which applies only in rare circumstances. In *Scharfstein v. BP W. Coast Prods., LLC*, 292 Or. App. 69 (2018), the Oregon Court of Appeals addressed the "illegal charge" theory. In *Scharfstein*, the defendant charged a fee when customers used a debit card to purchase gasoline, but failed to disclose the fee under an administrative rule issued by the Oregon Attorney General

Page 12 -    Defendant WinCo Foods, LLC's Motion to Dismiss

4820-0983-6213.1

under ORS 646.608(1)(u). The court held that "[i]n an illegal charge case such as this one, whether a customer relied on the nondisclosure of a fee does not matter; what matters is whether the fee is disclosed in the particular way that the law requires." 292 Or. at 89. In other words, because the defendant failed to disclose the fee in accordance with the rule issued by the Oregon Attorney General, the fee charged to customers caused the defendant "ascertainable loss." *Scharfstein* and its "illegal charge" theory, however, have no application here because plaintiffs do not (and cannot) allege that WinCo was required to disclose the CES obligation to customers in any certain way. Because no law, administrative rule, or regulation requires WinCo to disclose the CES obligation in a "particular way," the "illegal charge" theory cannot apply.

Because plaintiffs have not alleged any recognized theory of "ascertainable loss," plaintiffs cannot state a claim under the UTPA.

### D.     Plaintiffs' Allegation of a "Willful" Use of an Unlawful Practice Is Conclusory and Unsupportable

To sufficiently allege a UTPA claim, a plaintiff must plead that the defendant willfully violated the statute. ORS 646.638(1) ("[A] person that suffers an ascertainable loss of money or property, real or personal, as a result of another person's willful use or employment of a method, act or practice declared unlawful under ORS 646.608, may bring an individual action in an appropriate court to recover actual damages or statutory damages of $200, whichever is greater"). "A willful violation occurs when the person committing the violation knew or should have known that the conduct of the person was a violation." ORS 646.605(10).[4]

---

[4] A class action for statutory damages is permissible only when a defendant's conduct is "reckless and knowing." ORS 646.638(8)(a).

Page 13 -    Defendant WinCo Foods, LLC's Motion to Dismiss

Plaintiffs allege that WinCo's violation of the UTPA was "willful" because WinCo "knew the sticker price on its shelves was lower than the price defendant actually charged and collected from its customers for certain non-grocery consumer goods."  Am. Compl. ¶ 25.  Plaintiffs' allegations of "willfulness," however, are entirely conclusory, and do not satisfy their obligation to plead facts sufficient to state the elements of the claim.  *Adamson v. WorldCom Commc'ns, Inc.*, 190 Or. App. 215, 222 (2003); *McKie v. Sears Protect. Co.*, No. CV 10-1531-PK, 2011 WL 1587112, at *9 (D. Or. Feb. 22, 2011) (recognizing that "conclusory allegations of willfulness do not suffice" for purposes of a claim under the UTPA).  A bare allegation that the defendant acted willfully is insufficient.

Beyond alleging that WinCo's conduct was "willful," plaintiffs do not allege any facts that WinCo knowingly engaged in an unlawful practice.  Similarly, plaintiffs do not allege that WinCo is improperly assessing the CES on products exempt from the Portland Clean Energy Fund (e.g., grocery items and medicine).  Moreover, because WinCo's practice of disclosing the CES obligation in its customer receipts is authorized by statute, it is not possible for plaintiffs to make good-faith allegations of additional facts to support a conclusion that WinCo's practice is willfully in violation of the UTPA.  WinCo relied on the statutory authorization to itemize the CES on customer receipts; therefore, it did not know (nor could it have known) that disclosing the CES obligation would give rise to a claim under the UTPA.

Because plaintiffs' Amended Complaint does not (and cannot) allege facts to support a willful violation of the UTPA, the claim should be dismissed with prejudice.

## II.     The Complaint Fails to State a Claim for Unjust Enrichment

Oregon courts consider unjust-enrichment claims on a "case-by-case" basis, by "examin[ing] the established legal categories of unjust enrichment as reflected in Oregon case law and other authorities to determine whether any particular enrichment is unjust." *Larisa's Home Care, LLC v. Nichols-Shields*, 362 Or. 115, 132 (2017).  Under *Larisa's* approach, "Oregon courts should examine the established legal categories of unjust enrichment as reflected in Oregon case law and other authorities to determine whether any particular enrichment is unjust." *Id.*  To recover for unjust enrichment, a plaintiff must demonstrate that the alleged injustice is "rooted in recognized legal principles and not in abstract notions of morality." *Cumming v. Nipping*, 285 Or. App. 233, 239 (2017).  In other words, a plaintiff must show more than "abstract unfairness."  *Grimstad v. Knudsen*, 283 Or. App. 28, 47 (2016).

Plaintiffs' claim for unjust enrichment fails on its face because WinCo retains no "benefit" by passing along the CES obligation to customers in the form of a surcharge, which is, in turn, given to the City of Portland to fund the Portland Clean Energy Fund.  While *Larisa's* may have changed the traditional manner in which Oregon courts evaluate what conduct is "unjust," the requirement that "one party has obtained benefits from another" remains a critical aspect of an unjust enrichment claim.  *Larisa's*, 362 Or. at 133 (noting that a "conclusion that one party has obtained benefits from another by fraud is . . . one of the most recognizable sources of unjust enrichment").  WinCo retains no additional revenue or "profit"—as plaintiffs allege, but the law directly contradicts—from the CES because any additional revenue that WinCo collects from the CES is paid to the City of Portland.  Because plaintiffs cannot show a "benefit retained" by WinCo as a result of the CES, plaintiffs cannot state a claim for unjust enrichment.

Plaintiffs further allege that WinCo has engaged in "reprehensible" conduct, but nothing in the Amended Complaint demonstrates that WinCo dealt with plaintiffs unjustly under any recognized legal principle. As set forth above, the City of Portland affirmatively authorizes retailers to itemize the CES obligation on receipts. Although plaintiffs may disagree with the City of Portland's implementation of the law, their disagreement does not rise to a legally valid claim against WinCo for following it.

## CONCLUSION

For the foregoing reasons, WinCo respectfully requests that the court grant this motion to dismiss plaintiffs' Amended Complaint in its entirety with prejudice.

DATED: February 25, 2020

MILLER NASH GRAHAM & DUNN LLP

*s/ Thomas C. Sand*
Thomas C. Sand, OSB No. 773322
tom.sand@millernash.com
John C. Clarke, OSB No. 153245
john.clarke@millernash.com
Phone: 503.224.5858
Fax: 503.224.0155

Attorneys for Defendant WinCo Foods, LLC

CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing Defendant WinCo Foods, LLC's Motion to Dismiss on the attorney or party listed below on the date set forth below by the method(s) indicated:

| | |
|---|---|
| Michael Fuller<br>OlsenDaines<br>111 SW Fifth Ave., Ste. 3150<br>Portland, OR  97204<br><br>*Attorneys for Plaintiff* | ☒ First-class mail, postage prepaid<br>☐ Facsimile, pursuant to ORCP 9 F<br>☐ Hand-delivery<br>☐ Overnight courier, delivery prepaid<br>☐ E-mail, pursuant to ORCP 9 G<br>☒ E-mail copy, as a courtesy only<br>  michael@underdoglawyer.com<br>☒ OJD EFILING SYSTEM, if registered at the party's email address as recorded on the date of service in the eFiling system, pursuant to UTCR 21.100.<br>☐ Other |
| Kelly Donovan Jones<br>Law Office of Kelly D. Jones<br>819 SE Morrison St., Suite 255<br>Portland, OR  97214<br><br>*Attorneys for Plaintiff* | ☒ First-class mail, postage prepaid<br>☐ Facsimile, pursuant to ORCP 9 F<br>☐ Hand-delivery<br>☐ Overnight courier, delivery prepaid<br>☐ E-mail, pursuant to ORCP 9 G<br>☒ E-mail copy, as a courtesy only<br>  michael@underdoglawyer.com<br>☒ OJD EFILING SYSTEM, if registered at the party's email address as recorded on the date of service in the eFiling system, pursuant to UTCR 21.100.<br>☐ Other |

DATED:  February 25, 2020.

*s/ Thomas C. Sand*
Thomas C. Sand, OSB No. 773322
John C. Clarke, OSB No. 153245

*Of Attorneys for Defendant*

Page 1 -    Certificate of Service

4820-0983-6213.1