**Michael Fuller, OSB No. 09357**
OlsenDaines
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
michael@underdoglawyer.com
Direct 503-222-2000

**Kelly D. Jones, OSB No. 074217**
kellydonovanjones@gmail.com
Direct 503-847-4329

**Daniel J. Nichols, OSB No. 101304**
dan@jurislawyer.com
Direct 503-334-0611

Of Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **VIRGINIA SIMONIN** individually, and on behalf of others similarly situated | Case No. 3:19-cv-02094-AR |
| Plaintiff | **UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT** |
| vs | |
| **WINCO FOODS, LLC** | |
| Defendant | |

**MOTION FOR FINAL APPROVAL** – Page 1 of 31

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................3

L.R. 7-1 CERTIFICATION ....................................................................5

MOTION ..........................................................................................5

INTRODUCTION ...............................................................................6

ARGUMENT SUPPORTING FINAL APPROVAL...............................10

    1.  The notice plan was successfully implemented ..........................10

    2.  Claims submissions were robust and CPT's extensive claims verification procedures have weeded out many suspected fraudulent and invalid submissions .............................................14

    3.  No class members have timely opted out or objected. ...............19

    4.  The settlement is fair, reasonable, and adequate and should be granted final approval ...................................................................19

        4.1  Adequacy of representation .................................................21

        4.2  Arm's-length negotiations...................................................22

        4.3  Adequacy of class relief ......................................................22

        4.4  Equal treatment ..................................................................27

        4.5  Reaction of the class members to the settlement and the views of counsel ...................................................................28

    5.  The agreed upon *cy pres* recipients should be approved.............29

CONCLUSION....................................................................................30

# TABLE OF AUTHORITIES

## Cases

*Aquino v. 99 Cents Only Stores LLC*,
No. 2:22-cv-01966-SPG-AFM, 2024 U.S. Dist. LEXIS 6950 (C.D. Cal. Jan. 2, 2024)...........................................................................27

*Baker v. Seaworld Entm't, Inc.*,
No. 14-cv-02129-MMA-AGS, 2020 WL 4260712, 2020 U.S. Dist. LEXIS 131109 (S.D. Cal. July 24, 2020) ....................................23

*Balderas v. Massage Envy Franchising, LLC*,
No. 12-cv-06327, 2014 U.S. Dist. LEXIS 99966, 2014 WL 3610945 (N.D. Cal. July 21, 2014)..............................................25

*Churchill Vill., L.L.C. v. GE*, 361 F.3d 566 (9th Cir. 2004)...................20

*Hardy v. Embark Tech., Inc.*,
No. 3:22-cv-02090-JSC, 2024 WL 1354416, 2024 U.S. Dist. LEXIS 58266 (N.D. Cal. Mar. 29, 2024) ......................................25

*Harrison v. Harry & David Operations, Inc.*,
No. 1:18-cv-00410-CL, 2022 U.S. Dist. LEXIS 178196 (D. Or. Sept. 29, 2022) ................................................................................24

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) .........................................................25

*Marshall v. Northrop Grumman Corp.*,
No. 16-CV-6794 AB (JCx), 2020 WL 5668935, 2020 U.S. Dist. LEXIS 177056 (C.D. Cal. Sept. 18, 2020).....................................27

*Martinelli v. Johnson & Johnson*,
No. 2:15-cv-01733-MCE-DB, 2022 WL 4123874, 2022 U.S. Dist. LEXIS 163471 (E.D. Cal. Sept. 8, 2022).......................................28

*Nachshin v. AOL, LLC*,
663 F.3d 1034 (9th Cir. 2011) .......................................................29

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) .........................................................25

*Peterson v. BSH Home Appliances Corp.*,
No. 2:23-cv-00543-RAJ, 2024 U.S. Dist. LEXIS 105624 (W.D. Wash. June 13, 2024) .......................................................9, 20, 21

*Rivera v. W. Express Inc.*,
No. EDCV 18-1633 JGB (SHKx), 2022 U.S. Dist. LEXIS 76533 (C.D. Cal. Apr. 25, 2022) ..............................................................13

*Stovall-Gusman v. W.W. Granger, Inc.*,
    No. 13-cv-2540, 2015 U.S. Dist. LEXIS 78671, 2015 WL 3776765
    (N.D. Cal. June 17, 2015) ...........................................................25

**Statutes**

Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b) ........................13

Unlawful Trade Practices Act ...............................................6, 18, 23, 29

ORS 646.638(8) .....................................................................23

**Rules**

FRCP 23(a) ..............................................................................9

FRCP 23(b) ..............................................................................9

FRCP 23(b)(3) .........................................................................10

FRCP 23(c)(2) .....................................................................10, 11

FRCP 23(e) .......................................................................passim

FRCP 23(e)(1) .....................................................................9, 10

FRCP 23(e)(2) ...................................................................9, 19, 21

FRCP 23(e)(2)(A)-(D) ..................................................................20

FRCP 23(e)(2)(B) .......................................................................22

FRCP 23(e)(2)(C) .....................................................................22,23

FRCP 23(e)(2)(D) .......................................................................28

FRCP 23(e)(3) ...................................................................20, 22, 27

FRCP 23(h) .............................................................................26

**Other Authorities**

Jashayla Pettigrew, *Portland WinCo Shoppers Could Receive $200 Due
to Class Action Suit*, Koin6 News (May 14, 2024),
https://www.koin.com/local/portland-winco-shoppers-could-receive-200-
due-to-class-action-suit-05142024 ....................................................13

Kristine de Leon, *Portland WinCo Customers Have July Deadline to
Claim $200 Payment in Class Action Settlement*, The Oregonian (May
14, 2024), https://www.oregonlive.com/business/2024/05/portland-
winco-customers-have-july-deadline-to-claim-200-payment-in-class-
action-settlement.html ................................................................13

## L.R. 7-1 CERTIFICATION

Defendant WinCo Foods, LLC (defendant or WinCo) does not oppose the relief sought in this motion.

## MOTION

Pursuant to FRCP 23(e), class representative plaintiff Virginia Simonin moves the Court for final approval of the preliminarily approved Class Settlement Agreement (Agreement) (Doc. 19-1) and class certification for settlement purposes only, by entering an order substantially in the same from as the proposed final approval order attached and filed with the Agreement as Exhibit 6 (Doc. 91-1 at 51-56).

In addition to the following memorandum, this motion is supported by the Declaration of Kelly D. Jones (Jones Decl.), the Declaration of Julie Green of the court-appointed class administrator CPT, Group, Inc. (CPT) (Green Decl.), the exhibits attached to or filed with those declarations, and the documents and submissions previously filed, and orders entered, in this case.

**INTRODUCTION**

An extensive summary of the factual and procedural background and the key terms of the preliminarily approved class action settlement and Agreement are set forth in plaintiff's motion for preliminary approval. *See* Doc. 91 at 8-15. As a brief recap, this putative class action was initially filed in Oregon state court, alleging that WinCo violated Oregon's Unlawful Trade Practices Act (UTPA) by adding surcharges to the price class members paid for non-grocery goods at WinCo's Portland store registers that were not disclosed in the advertised shelf prices for those goods. Doc. 1.

After WinCo's removal to this Court, a failed motion to dismiss by WinCo, multiple amendments to the pleadings, substitution and dismissal of multiple proposed class plaintiffs, leaving only Ms. Simonin as the remaining class representative plaintiff, extensive discovery including depositions and expert reports, the filing and full briefing of a contested motion for class certification by plaintiff and a second motion to dismiss by WinCo, and unsuccessful settlement negotiations with two different mediators, the parties reached a proposed classwide settlement with the assistance of a third mediator, senior Multnomah County Circuit Court Judge Henry Kantor. Docs. 4-95.

As to the key terms of the settlement, in exchange for the non-opt-out class members releasing any claims that they could have been

brought in this action, WinCo will fund a common settlement fund in the amount of $3,365,000 and will separately pay up to $235,000 for CPT's settlement administration costs. Doc. 91-1 ¶¶ 2.1, 2.9(d), 4.2(a). The Agreement also provides that class counsel would request 30% of the common settlement fund for their fees and no more than $150,000 for incurred costs and expenses, and that plaintiff would request no more than $10,000 for a class representative plaintiff service award. *Id.* at ¶¶ 2.9(a) & (b).[1]

Critically, under no circumstances will any portion of the settlement fund revert to WinCo. Instead, any remainder after distribution to the class members, plaintiff, and class counsel will be paid to appropriate nonprofits recommended by the parties and to be approved by the Court: 50% to Oregon Food Bank, 25% to Oregon Consumer Justice, and 25% to Oregon Consumer League. *Id.* at ¶ 3.4(e).

On March 29, 2024, plaintiff filed an unopposed motion for preliminary approval of class settlement and class certification, along with supporting declarations from class counsel and CPT and the various exhibits filed with those declarations, including proposed class

---

[1] The to-be-requested amounts for these items were only agreed to after securing agreement on the comprehensive amount of the class settlement fund, and the Agreement or settlement is in no way conditioned upon these specific amounts being approved or awarded by the Court. *See* Doc. 91-1 at ¶ 2.9(a)-(d); Doc. 93 at ¶ 4. On April 26, 2024, plaintiff filed a separate Fee, Expense, and Service Award Application, along with supporting declarations and exhibits filed in support. *See* Docs. 99-103.

notice and claim forms and proposed orders. Docs. 91-95. The class is defined as:

> All persons who, between June 1, 2019 and May 8, 2022, purchased certain non-grocery items from a WinCo store located within the City of Portland, Oregon and paid to WinCo a surcharge on certain non-grocery items related to the Clean Energy Surcharge enacted by the City of Portland, effective January 1, 2019.

> Excluded from the Settlement Class are: (1) any Judge presiding over this Action and members of their families; (2) persons who properly execute and file a timely request for exclusion from the Settlement Class; (3) David Maingot; and (4) the legal representatives, successors, or assigns of any such excluded persons.

Doc. 91-1 ¶ 1.8; Doc. 91 at 11-12; Doc. 98 at 3.

On April 5, 2024, the Court entered an order[2] granting preliminary approval of the class settlement and certification of the class for settlement purposes, appointing CPT as the class administrator, and directed CPT to give notice to the class and initiate and oversee the claims process, as set forth in the Agreement and using the court-approved class notice and claim forms and notice plan designed by CPT and the parties. Doc. 98.

Plaintiff now files this motion, seeking final approval of the preliminarily approved class settlement, after the final fairness hearing scheduled for August 8, 2024, now that the class has been provided

---

[2] The parties have given full consent to jurisdiction by a U.S. Magistrate Judge. Docs. 88-90.

notice and had opportunity to submit claims, opt out of the settlement, and object. The propriety of class certification for settlement purposes under FRCP 23(a) and (b),[3] the sufficiency of class notice under FRCP 23(e)(1), the reasonableness of plaintiff's and class counsel's fee, expense, and service award requests, and detailed arguments as to why the settlement is fair, reasonable, and adequate under FRCP 23(e)(2) have already been set forth in the motion for preliminary approval and plaintiff's fee, expense, and service award application—with extensive and relevant caselaw and evidentiary support. *See* Doc. 91; Doc. 99.

Accordingly, and appropriately, the central focus of this motion is providing an update to the Court regarding the class notice and claims process and the overall reaction of the class members to the settlement, to show that the Court's preliminary findings that the settlement is fair, reasonable, and adequate should be extended to an order granting final approval.

---

[3] Because nothing has changed since preliminary approval that would affect the propriety of granting settlement class certification, plaintiff does not belabor this issue in this motion. *See, e.g., Peterson v. BSH Home Appliances Corp.*, No. 2:23-cv-00543-RAJ, 2024 U.S. Dist. LEXIS 105624, at *6 (W.D. Wash. June 13, 2024) ("In the Preliminary Approval Order the Court preliminarily found that the . . . requirements of Rule 23 of the Federal Rules of Civil Procedure were satisfied. Since the Court's Preliminary Approval Order, the deadline for opt-outs and objections have passed. Upon review of the declarations of the notice and claims administrator, CPT Group, Inc. ('CPT') and Settlement Class Counsel, no opt-outs or objections were made by Settlement Class Members. Additionally, no material changes have occurred since that Order that would alter this ruling. The Court now finally approves certification of the Settlement Class and the Settlement Agreement." (internal citation to the record omitted)).

**MOTION FOR FINAL APPROVAL** – Page 9 of 31

As explained below, class members' desire to participate in the settlement has far exceeded the parties' and CPT's expectations and their reaction to the settlement has been overwhelmingly positive. No class member has decided to opt out of, and no class member has validly or timely objected to, the settlement. For the reasons that follow, and those already expressed in the preliminary approval motion, the Court should grant final approval to the parties' Agreement and settlement.

## ARGUMENT SUPPORTING FINAL APPROVAL

### 1. The notice plan was successfully implemented.

FRCP 23(b)(3) class actions such as the case at hand must satisfy the notice provisions of FRCP 23(c)(2) and, upon settlement of such cases, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." FRCP 23(e)(1). FRCP 23(c)(2) requires that "the best notice that is practicable under the circumstances."

As the Court already knows, a diverse media publication notice campaign and a claims process were required to effectuate this settlement, because the class members were not identifiable through WinCo's records, given that WinCo is largely a cash operation that does not accept credit cards and because WinCo did not have a system in place to track the collection of a surcharge with a particular debit card transaction. The class members are all customers of WinCo's three

Portland stores, located within a few miles apart, where the undisclosed surcharges at issue were collected.

To meet these needs and the circumstances and needs of this case, the parties and CPT designed a modern, online-focused notice and claims administration plan that satisfied FRCP 23(c)(2) and constitutional due process and was approved by the Court as "sufficient to inform Settlement Class Members of the terms of the Settlement, their rights under the Settlement, their rights to object to the Settlement, their right to make a claim to receive a payment under the Settlement or elect not to participate in the Settlement and the processes for doing so, and the date and location of the Final Approval Hearing." Doc. 98 at 6; *see also* Doc. 91 at 35-38; 91-1 at 39-46; Doc. 92 at 5-11.

As Ms. Green explains in detail in her declaration filed in support of this motion, the notice plan, which sought to "reach approximately 75% of the" class "through targeted digital internet banner advertisements, paid keyword search on Google & Bing, and social media advertisement campaign on Facebook, Instagram, and Reddit, supplemented by a press release, settlement website, email and call center support . . . was successfully and timely implemented on May 10, 2024, and completed on July 8, 2024, in compliance with the parties'

Settlement Agreement and the Court's Preliminary Approval Order."
Green Decl. ¶¶ 14-15. Moreover,

- The 24-hour, toll-free support line, which went live on May 10, 2024, received 154 calls. *Id*. at ¶ 7.

- CPT's case-dedicated email address received 530 email inquiries. *Id*. at ¶ 8.

- The settlement website, which went live on May 10, 2024, includes a page called "Court Documents" that contains links to downloadable versions of the important case documents including the Agreement, preliminary approval motion and order, plaintiff's fee, expense, and service award application.

- During the notice and claims filing period the settlement website provided a link to file a claim form electronically. *Id*. at ¶ 9.

- As of the date of Ms. Green's declaration, there have been approximately 6,474,013 views of the website's various pages, and approximately 4,875,920 unique visitors to the site. *Id*. at ¶ 10.

- The digital media portion of the notice program that concluded on July 8, 2024, served a total of 3,907,694 viewable impressions on mobile and desktop display prompting 36,304 link clicks to view the settlement website. *Id*. at ¶ 12.

- CPT's May 10, 2024 PR Newswire Oregon Newsline press release had the potential to reach approximately 106 million individuals

through interactions with the content by 254 media outlets or influencers, resulting in 6,761 views and 1,504 click-throughs.

As a result of CPT's media campaign, and with the additional efforts of class counsel to publicize the settlement, the proposed settlement received widespread local television and news coverage.[4] CPT has also confirmed that, on April 8, 2024, it sent notification to the U.S. Attorney General, and the Attorneys General in all 50 states and U.S. territories, in compliance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b). Green Decl. ¶ 5.

"The Court previously approved the form of the proposed class notice. As discussed above, the Settlement Administrator implemented the notice procedure. Based on CPT's Declaration, the Court [should] find[] that the Class Notice and notice procedure fairly and adequately informed the Class Members of the nature of the action, the terms of the proposed settlement, the effect of the action and release of claims, the Class Members right to exclude themselves from settlement, and their right to object to the proposed settlement." *Rivera v. W. Express Inc.*, No.

---

[4] *See, e.g.*:
- Jashayla Pettigrew, *Portland WinCo Shoppers Could Receive $200 Due to Class Action Suit*, Koin6 News (May 14, 2024), https://www.koin.com/local/portland-winco-shoppers-could-receive-200-due-to-class-action-suit-05142024.
- Kristine de Leon, *Portland WinCo Customers Have July Deadline to Claim $200 Payment in Class Action Settlement*, The Oregonian (May 14, 2024), https://www.oregonlive.com/business/2024/05/portland-winco-customers-have-july-deadline-to-claim-200-payment-in-class-action-settlement.html.

**MOTION FOR FINAL APPROVAL** – Page 13 of 31

EDCV 18-1633 JGB (SHKx), 2022 U.S. Dist. LEXIS 76533, at *12-13

(C.D. Cal. Apr. 25, 2022) (internal citations omitted).

**2. Claims submissions were robust and CPT's extensive claims verification procedures have weeded out many suspected fraudulent and invalid submissions.**

As is well documented throughout this litigation, given the circumstances, a claims process was necessary to ascertain the identities, as well as the number, of class members. Using their combined data, including the opinions of experts retained by the parties to assist in making these complex analytical assessments, the parties reached a good-faith estimate of the class membership as approximately 120,000 individuals who had purchased at least one non-grocery item and paid at least one of WinCo's undisclosed surcharges during that transaction within the class period. *See* Doc. 91 at 13, 18; Doc. 93 ¶ 6; Doc. 92 ¶ 9. Based on the unique factors of this case, and extensive experience in similar class settlement administrations, CPT estimated its notice plan would result in a valid claims rate of approximately 7%. Doc. 92 at 27.

To encourage the greatest amount of class member participation and to get settlement payments to the greatest number of class members possible, CPT and the parties designed and implemented a modernized, targeted, efficient claims filing and distribution process, for class members to verify their class membership, to opt out of the settlement

if they so chose, and to receive payments electronically, if desired. Doc. 91-1 at 46-51.

The deadline for class members to submit a claim was July 9, 2024. During the claims period—May 10, 2024, through July 9, 2024—CPT received a total of 1,516,276 claim submissions, of which the majority were submitted online through the website. Green Decl. ¶ 16.

The sheer number of claims submissions is alone indicative of potential fraud in the claims process. The upside of the success of the notice plan and the efficiency and convenience of providing class members with the ability to submit claims online (and receive distributions electronically) has some downsides. Unfortunately, class settlements with claims processes have become an attractive target for criminals or others who see it as an opportunity to exploit. As explained by CPT, "bot-like and/or otherwise suspicious claim submissions are not uncommon in cases with no (or minimal) class list and where the claim form is open to the public," and this is "typical in other claims administrators' experience on similar cases." *Id*. at ¶ 17.

To address this current reality, CPT has developed various tactics to both limit and identify suspicious claims and steps to discourage fraudulent submissions, which it employed in this case early on, in consultation with the parties, including:

**MOTION FOR FINAL APPROVAL** – Page 15 of 31

- Utilizing Google's reCAPTCHA during submission, interaction monitoring, and detailed logging to help distinguish between humans and bots, enhancing website security against spam and abuse.

- Gathering and analyzing various data points, including IP addresses, submission timestamps, and contact information (name, email address, mailing address), which assist in identifying patterns that can indicate automated or high-risk submissions.

- Designing the claim form to gather unique information to provide additional data points for validation. *Id.*

Utilizing these comprehensive tactics, described in detail in Ms. Green's declaration, CPT was able to invalidate 17,489 claim submissions based on nonconforming purchase date criteria; 90,936 claim submissions based on nonconforming store addresses; 146 claim submissions based on inapplicable non-grocery item descriptions; 635,000 claim submissions based on suspicious email address patterns; 144,500 claim submissions based suspicious IP addresses; 573,500 claim submissions based on "digital identity" indicators associated with a high or likely risk of fraud; and 10,000 claim submissions based digital payment vendor record-based fraud indicators—resulting in the invalidation of over 1,471,000 online submissions to date. *Id.* at ¶¶ 18-26.

**MOTION FOR FINAL APPROVAL** – Page 16 of 31

Currently, this leaves <u>43,990</u> remaining claim submissions classified as valid. *Id*. at ¶ 26. However, continuing until the distribution date, CPT will further review the claim submissions, and although "it is impossible to eliminate every suspicious claim, [CPT] will ensure to the best of [its] ability that the final list of valid claimants is limited to the submissions for which [CPT and the parties] have a high degree of confidence are from verified class members." *Id*. at 26. CPT anticipates that after employing additional review, the final count of valid claims eligible for payment will be reduced from the current 43,990. *Id*.

In summary, the notice plan and claims process was designed and implemented so successfully that CPT's estimated 7% claims rate was far exceeded, as applied to the parties' 200,000-person class size estimate. Fortunately, given the clear presence of fraudsters, CPT's claims validation tools have proven to be highly effective: reducing the total claims submissions count of over 1.5 million to a current valid class member count of just less than 44,000, with further reductions anticipated.

Based on multiple hypothetical scenarios relating to CPT's continued claims verification processing, CPT estimates[5] per-class member recovery as follows based on the final count of valid claims:

---

[5] As also utilized by plaintiff below, CPT calculated these projected per-class member estimations using the following formula, presuming plaintiff's and class counsel's awards are granted in the amounts requested in their application (Doc. 99), to determine the remainder of the common settlement fund to be distributed to the class:

**MOTION FOR FINAL APPROVAL** – Page 17 of 31

- 25,000 verified class members:        $89.97

- 30,000 verified class members:        $74.98

- 35,000 verified class members:        $64.26

- 40,000 verified class members:        $56.23

- 44,000[6] verified class members:     $51.12

*Id.* at ¶ 27.

Although per-class member distributions will be less than the $200 per-class-member cap that was anticipated using CPT's single-digit projected claims rate at the preliminary approval stage, class members will receive no less than 25% of the maximum damages they could have received *if* successful on the merits of the class UTPA claim at trial, and an amount equating to approximately 500 times their actual out-of-pocket economic losses.[7]

Arguably more important, the higher than anticipated claims rate satisfies the utilitarian goal underpinning consumer class actions: to provide relief to the greatest number of injured consumers. The claims administration procedures adopted and implemented here have effectually counterbalanced the goal of making the process accessible enough to encourage very significant class member participation with

---

$3,365,000 - $1,009,500 - $96,240.35 - $10,000 = $2,249,259.65—rounded up to $2,249,260.

[6] This is slightly more than the current valid claim count.

[7] *See* Doc. 64-11 at 20 ¶ 56 ("The average (mean) surcharge per transaction was 14 cents; the median surcharge was 9 cents.").

**MOTION FOR FINAL APPROVAL** – Page 18 of 31

the objective to weed out fraudsters and other invalid claimants, so that equal shares of the common settlement fund can be distributed to as many valid, injured class members as possible.

### 3. No class members have timely opted out or objected.

The class notices approved by the Court, and the class website, unambiguously provided that the deadline for class members to request exclusion (opt out) from the settlement or to object to any part of the settlement was July 9, 2024, and adequately explained what those terms mean and how to do so. *See* Green Decl. ¶ 10, Exhibit A.

As of this date, neither CPT nor class counsel is aware of any timely or valid requests for exclusions from, or objections to, the settlement. Green Decl. ¶ 29; Jones Decl. ¶ 3

### 4. The settlement is fair, reasonable, and adequate and should be granted final approval.

A court may not finally approve a settlement that is binding on non-excluded class members until "after a hearing and only on finding that it is fair, reasonable, and adequate." FRCP 23(e)(2). The codified considerations for this assessment are whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and, (iv) any agreement

required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

FRCP 23(e)(2)(A)-(D).

Prior to codification of these considerations in the rule, the Ninth Circuit instructed courts to balance the following factors: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 570 (9th Cir. 2004).

It appears that at least some in-circuit courts still apply both the FRCP 23(e)(2)(A)-(D) considerations and the "Churchill" factors in assessing final approval, although these factors are largely congruous and therefore overlap. *See*, *e.g.*, *Peterson v. BSH Home Appliances Corp.*, No. 2:23-cv-00543-RAJ, 2024 U.S. Dist. LEXIS 105624, at *10-20 (W.D. Wash. June 13, 2024). Plaintiff takes a blended approach here, applying the relevant factors of both lists, but with emphasis on FRCP 23(e)(2). As explained (and reconfirmed) below, in evaluating these considerations that are applicable, or under any applicable measure,

**MOTION FOR FINAL APPROVAL** – Page 20 of 31

granting final approval of the Agreement and settlement as fair, reasonable, and adequate under FRCP 23(e)(2) is warranted.

### 4.1 Adequacy of representation

The adequacy of class counsel, generally and in the context of litigating this case and securing the settlement on behalf of the class, and the adequacy of Ms. Simonin as the class representative, has been discussed thoroughly in the motion for preliminary approval and in the fee, expense, and service award application. *See* Doc. 91 at 21-23; Docs. 93-95; Doc. 99 at 14-16; Docs. 100-103. And the Court has already recognized class counsel's and plaintiff's adequacy in the preliminary approval order. Doc. 98 at 4; *see also Peterson*, 2024 WL 2978216, 2024 U.S. Dist. LEXIS 105624, at *11 ("This Court sees no reason to alter its previous finding [as to adequacy] and thus Rule 23(e)(2)(A) is satisfied.").

Nothing has occurred since to suggest the Court should deviate from its findings regarding adequacy of class counsel and Ms. Simonin. To the contrary, beyond the above-referenced submissions and a review of the docket in this matter, plaintiff and class counsel hope that further evidence of their adequacy and continued commitment to securing just relief for the class has been demonstrated by their subsequent efforts to field inquiries from potential class members and in working closely with CPT (and defense counsel) to make decisions regarding the claims

process and to combat fraudsters' attempts to commandeer the settlement fund.

## 4.2 Arm's-length negotiations

As has also been extensively covered elsewhere, the settlement and Agreement were negotiated with the assistance of a respected judge with significant consumer class action experience, Judge Kantor, only after two previous settlement attempts—a judicial settlement conference with Judge Kasubhai and a private mediation with retired Judge Hogan—were unsuccessful. There should be no question that this settlement resulted from intensive, informed, non-collusive, and arm's-length negotiations satisfying FRCP 23(e)(2)(B).

## 4.3 Adequacy of class relief

In assessing the adequacy of the class relief provided by the settlement, FRCP 23(e)(2)(C) instructs courts to take into account the "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and, (iv) any agreement required to be identified under Rule 23(e)(3)."

The FRCP 23(e)(2)(C) factors, including the costs, risks, and delay of trial and appeal, have also already been addressed at length in the preliminary approval motion. To briefly reiterate, a court "balance[s]

the continuing risks of litigation (including the strengths and weaknesses of [p]laintiffs' case), with the benefits afforded to members of the Class, and the immediacy and certainty of a substantial recovery." *Baker v. Seaworld Entm't, Inc.*, No. 14-cv-02129-MMA-AGS, 2020 WL 4260712, 2020 U.S. Dist. LEXIS 131109, at *21-22 (S.D. Cal. July 24, 2020).

As is evident from a review of the many briefings by plaintiff in this matter, plaintiff and class counsel are confident that the class UTPA claim is strong. With that said, it has become equally clear that WinCo believes, not without any merit, in the strength of its defenses. And for the class members to be awarded $200 each after trial, plaintiff must establish that WinCo engaged in its alleged UTPA violations with a heightened reckless or knowing scienter. *See* ORS 646.638(8). There are also potentially relevant private remedy UTPA issues that are currently in flux and pending review in the Oregon appellate courts, increasing the likelihood of an appeal in this matter, if plaintiff does succeed on the merits of the claim in the absence of this settlement. In any event, it cannot be denied that "there remains considerable risk, expense, and delay for both sides prior to the conclusion of this case absent a settlement." *See Harrison v. Harry & David Operations, Inc.*, No. 1:18-cv-00410-CL, 2022 U.S. Dist. LEXIS 178196, at *3-4 (D. Or. Sept. 29, 2022).

**MOTION FOR FINAL APPROVAL** – Page 23 of 31

As to time and expense, this case has already been litigated for approximately 4.5 years, and has resulted in substantial costs, including the retention of experts. *See* Doc. 99. Advancing the case to trial—assuming contested certification and summary judgment motions are overcome—will of course dramatically increase the costs for all parties.

Especially when considering the uncertainties, risks, and time involved with proceeding toward trial if the settlement is not approved, the substantial $3,365,000 common settlement fund—which does not include the additional $235,000 WinCo will separately pay to cover CPT's administration costs and will provide approximately $2,249,260 for pro rata class member payment distributions—should be considered fair, reasonable, and adequate. As detailed above, after extensive, effective, and ongoing tactics to root out and invalidate fraudulent and suspicious claims, the valid claims rate still far surpassed CPT's 7% estimation. Although that means the per-class-member distributions will not reach the $200 threshold[8] allowed by the Agreement (and the UTPA), and estimated at preliminary approval based on the 7% valid claims rate that was used, many more injured class members will be provided relief than was anticipated.

---

[8] Through the class notices, the class members were always clearly informed that, if they filed a claim and if the settlement was approved, they would receive a pro rata distribution of the settlement fund <u>up to</u> $200. *See* Doc. 91-1 at 39 ("Those individuals included in the Settlement will be eligible to make a claim to receive up to $200 cash payment."); *id.* at 41 ("You may be entitled to receive a cash payment <u>up to</u> $200.00 . . . ."); Green Decl., Exhibit A.

**MOTION FOR FINAL APPROVAL** – Page 24 of 31

Moreover, that relief is still comparatively and relatively substantial. Using the current valid claims/class member numbers, class member distributions will be more than $50: at least 25% of the maximum damages they could receive *if* they were successful at trial, and approximately 500 times the amount of the out-of-pocket loss in the form of the undisclosed surcharges paid to WinCo. *See* Doc. 64-11 at 20 ¶ 56. This percentage of recovery is well beyond amounts found to be adequate in the caselaw. *See, e.g., Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (accord); *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-cv-2540, 2015 U.S. Dist. LEXIS 78671, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (approving settlement where net amount represented 7.3% of plaintiffs' estimated trial award); *Balderas v. Massage Envy Franchising, LLC*, No. 12-cv-06327, 2014 U.S. Dist. LEXIS 99966, 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014) (granting preliminary approval of a net settlement amount representing 5% of the projected maximum recovery at trial); *Hardy v. Embark Tech., Inc.*, No. 3:22-cv-02090-JSC, 2024 WL 1354416, 2024 U.S. Dist. LEXIS 58266, at *14 (N.D. Cal. Mar. 29, 2024)

**MOTION FOR FINAL APPROVAL** – Page 25 of 31

(settlement equating to approximately 1% of the estimated aggregate damages considered adequate).

Consideration of the effectiveness of any proposed method of distributing relief to the class and processing class-member claims has been well covered *supra*. The Court-approved claims process was efficiently front loaded into the class notice, opt-out, and objection period. The claim filing options provided a modernized, online-based option and a traditional mail option, for class members to accomplish their desired actions—whether to submit a claim, opt out of the settlement, or lodge an objection to all or part of the settlement. Distribution of payments to the class will offer the same options and exhibits the same efficiency: most verified class members have chosen one of the electronic payment options made available, while others have preferred the traditional check-in-the-mail option.

The terms and timing of any proposed award of attorney fees have also been extensively addressed, including in plaintiff's separately filed fee, expense, and service award application under FRCP 23(h). Doc. 99. As stated in the Agreement, which is in no way contingent upon any such award being approved by the Court, class counsel stated their intent to apply for a reasonable, routinely awarded[9] 30% allocation of

---

[9] *See Aquino v. 99 Cents Only Stores LLC*, No. 2:22-cv-01966-SPG-AFM, 2024 U.S. Dist. LEXIS 6950, at *28 (C.D. Cal. Jan. 2, 2024) ("The average percentage of the fund award in class actions is approximately one-third."); *Marshall v. Northrop Grumman Corp.*, No. 16-CV-6794 AB (JCx), 2020 WL 5668935, 2020 U.S. Dist. LEXIS 177056, at

the common settlement fund they helped secure for the benefit of the class. Doc. 91-1 ¶ 2.9(a). The attorney fee and expense award will be distributed to class counsel at the same time as the class member distributions. *Id.* at ¶ 4.3. Lastly, no class member has objected to class counsel's fee and expense request, which was communicated clearly in the class notices, the Agreement, and the fee and expense application, and which was posted on the class website during the entire 60-day notice and objection period. *See* Doc. 99; Green Decl. ¶ 9.

Regarding any agreement required to be identified under FRCP 23(e)(3), the only agreement made in connection with this settlement is the Agreement, which has been publicly filed in this case and has been available on the settlement website since the website went live and the notice period commenced. *See* Doc. 91-1; Green Decl. ¶ 9; *see also* https://www.oregonclassactionsettlement.com/Documents.

### 4.4  Equal treatment

Distribution to the class will be made on a pro rata basis, dividing the settlement fund remainder, after deducting the fee, expense, and service awards, by the amount of the final valid claimants/class members tally. In other words, the settlement structure has been designed to treat the class members equally. *See Martinelli v. Johnson*

---

*23 (C.D. Cal. Sept. 18, 2020) ("An attorney fee of one third of the settlement fund is routinely found to be reasonable in class actions.").

**MOTION FOR FINAL APPROVAL** – Page 27 of 31

& *Johnson*, No. 2:15-cv-01733-MCE-DB, 2022 WL 4123874, 2022 U.S. Dist. LEXIS 163471, at *17 (E.D. Cal. Sept. 8, 2022) (finding the pro rata distribution methods in the settlement agreement to be equitable under FRCP 23(e)(2)(D) even where class members who could not show proof of purchase would receive less relief than those that could do so).

### 4.5 Reaction of the class members to the settlement and the views of counsel

That no class members have formally objected to the settlement is an important consideration in granting final approval to a class settlement that has already been preliminarily approved by this Court because "[t]he absence of a large number of objectors supports the fairness, reasonableness, and adequacy of the settlement." *Id*. at *20 (internal quotation marks and citation omitted). Here there are none.

Also relevant, at least to some courts, is whether class counsel supports the settlement as fair, reasonable, and adequate under the circumstances, because counsel (for both parties) "are most closely acquainted with the facts of the underlying litigation . . . are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *Id*. (cleaned up). To the extent this Court finds it meaningful, as further documented in this and plaintiff's other briefings and supporting declarations, class counsel strongly recommends granting final approval to this settlement as it

**MOTION FOR FINAL APPROVAL** – Page 28 of 31

represents the best chance for these consumers to receive a fair and adequate recovery for the injuries that they suffered.

**5. The agreed upon *cy pres* recipients should be approved.**

The *cy pres* doctrine is utilized to distribute unclaimed or non-distributable portions of a class action settlement fund to the "next best" class of beneficiaries, typically a nonprofit organization that has an objective that relates to the subject of the underlying statute and is in the interests of the silent class members. *See Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036-39 (9th Cir. 2011).

Because no amount of the settlement will revert back to defendant, the Agreement provides that, as approved by the Court, any unclaimed funds after distribution (from uncashed checks, etc.) should be given as *cy pres* awards: 1/2 to Oregon Food Bank (OFB), 1/4 to Oregon Consumer Justice (OCJ), and 1/4 to Oregon Consumer League (OCL). Doc. 91-1 ¶¶ 2.10 (e), 3.4(e). Given the class claim at issue here is under Oregon's chief consumer protection statute, the UTPA, and the allegations of wrongdoing relate to overcharges assessed on customers of a low-cost grocery chain, all three proposed nonprofit entities are appropriate and worthy recipients of any unclaimed funds resulting from this settlement. OFB's mission is "to eliminate hunger and its root causes … because no one should be hungry." Jones Decl., Exhibit 1 at 1. OCJ's mission is to build "a future where financial and business

transactions can be relied upon as safe and where all Oregonians know and have recourse to exercise their consumer rights." *Id.*, Exhibit 2 at 5. "For over 58 years, [OCL] has worked to protect Oregonians' rights through education, policy development and advocacy." *Id.*, Exhibit 3 at 2.

## CONCLUSION

For the foregoing reasons, the reasons set forth in the motion for preliminary approval (Doc. 91) and in plaintiff's fee, expense, and service award application (Doc. 99), plaintiff respectfully requests that the Court grant the relief requested above and enter an order in substantially similar form to the proposed final approval order filed as Exhibit 6 to the Agreement (Doc. 91-1 at 51-56).


August 3, 2024

**RESPECTFULLY FILED,**

s/ Kelly D. Jones
**Kelly D. Jones, OSB No. 074217**
Of Attorneys for Plaintiff
Law Office of Kelly D. Jones
819 SE Morrison St., Suite 255
Portland, Oregon 97214
kellydonovanjones@gmail.com
Direct 503-846-4329

## CERTIFICATE OF SERVICE

I certify that this document was served on all necessary parties through this Court's ECF system.

August 3, 2024

s/ Kelly D. Jones
**Kelly D. Jones, OSB No. 074217**
Of Attorneys for Plaintiffs
The Law Office of Kelly D. Jones
819 SE Morrison St., Suite 255
Portland, Oregon 97214
kellydonovanjones@gmail.com
Direct 503-846-4329